William G. Myers III (ISB #5598)
Alison C. Hunter (ISB #8997)
HOLLAND & HART, LLP
800 W. Main Street, Suite 1750
P.O. Box 2527
Boise, ID 83701-2527
(208) 342-5000
wmyers@hollandhart.com
achunter@hollandhart.com

*Attorneys for Proposed Intervenor-Defendants Utah Department of Agriculture and Food and State of Utah School and Institutional Trust Lands Administration*

Kathy A.F. Davis (UT Bar 4022)
(*pro hac vice* application pending)
Anthony L. Rampton (UT Bar 2681)
(*pro hac vice* application pending)
UTAH ATTORNEY GENERAL'S OFFICE
5110 State Office Building
Salt Lake City, UT 84114
(801) 537-9045
kathydavis@agutah.gov
arampton@agutah.gov

*Attorneys for Proposed Intervenor-Defendants State of Utah, Utah Department of Agriculture and Food, and State of Utah School and Institutional Trust Lands Administration*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT,           )<br>                                                                   )<br>         Plaintiff,                                       )<br>                                                                   )<br>v.                                                               )<br>                                                                   )<br>INTERIOR BOARD OF LAND APPEALS &  )<br>U.S. DEPARTMENT OF THE INTERIOR,    )<br>                                                                   )<br>         Defendants, and                              )<br>                                                                   )<br>STATE OF UTAH, UTAH DEPARTMENT OF )<br>AGRICULTURE AND FOOD, and STATE OF )<br>UTAH SCHOOL AND INSTITUTIONAL       )<br>TRUST LANDS ADMINISTRATION             )<br>                                                                   )<br>         [Proposed] Intervenor-Defendants.  )<br>                                                                   ) | No. 1:19-cv-00037-BLW<br><br>**MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE** |

The State of Utah ("Utah"), the Utah Department of Agriculture and Food ("UDAF"), and the State of Utah School and Institutional Trust Lands Administration ("SITLA") respectfully submit this Memorandum in Support of their Motion to Intervene as of right in this case under Federal Rule of Civil Procedure 24(a) or, in the alternative, permissively under Rule 24(b).  Utah, UDAF, and SITLA are sometimes collectively referred to herein as the "State" or "Proposed Intervenor-Defendants."

## Introduction

Plaintiff Western Watersheds Project ("WWP") challenges the Interior Board of Land Appeals' ("IBLA") decision upholding the Bureau of Land Management's ("BLM") final decision to authorize livestock grazing on the Duck Creek Allotment, *Bureau of Land Management v. Western Watersheds Project, et al.*, 1919 IBLA 144 (September 22, 2017) ("IBLA Decision").

The State should be granted intervention in this suit as a matter of right.  First, this motion is timely, as the case is only in the beginning stages.  Second, the State has substantial interests, including sovereign interests, in the management of public land and resources within its borders.  The lands at issue in this case are situated entirely within Utah.  *See* Decl. of Melissa Rosenhan Wood in Supp. of Defs. Mot. to Dismiss or Transfer, ECF No. 6-2 ("Wood Decl."), ¶ 8; *see also*, Decl. of Taylor Payne in Supp. of Mot. to Intervene ("Payne Decl.") (attached hereto as Ex. A), ¶ 11.  Management of these lands has direct and indirect economic impacts on the State and its citizens and directly implicates property rights held in trust and managed by SITLA for the benefit of Utah schools.  *See* Utah Code Ann. § 53C-1-102(1) (West 2019). SITLA owns 1,078 acres within the Duck Creek Allotment and administers grazing exchange-of-use agreements regarding lands utilized and grazed by its lessees.  *See* Payne Decl. ¶¶ 12-18. UDAF distributes the money received from the sale or lease of SITLA lands to Utah school

districts. Utah Code Ann. § 4-20-106 (West 2019). The Utah legislature has also tasked UDAF to "work cooperatively to promote efficient multiple-use management of the rangeland resources of the public lands administered by [BLM] within the state to benefit the overall public interest." Utah Code Ann. § 4-20-109 (West 2019). Third, disposition of this matter in favor of WWP would impede the State's ability to protect these interests; such a disposition could deprive the State of revenue and jeopardize the full use of the property rights it holds for the benefit of all Utahns. Fourth, intervention is necessary because the Federal Defendants are not capable of adequately representing the State's unique interests.

Federal Defendants filed a Motion to Dismiss for Improper Venue or, in the Alternative, to Transfer and a supporting Memorandum on April 8, 2019. Defs. Mot. to Dismiss or Transfer, ECF No. 6 ("Defs. Mot. to Dismiss"); Defs. Mem. in Supp. of Mot. to Dismiss or Transfer, ECF No. 6-1 ("Defs. Mem."). The parties have recently submitted briefing on the Defendants' Motion to Dismiss, but this Court has not yet ruled on it.[1]

## Background

WWP challenges the IBLA's decision to uphold the BLM Salt Lake Field Office's decision to renew grazing permits on the Duck Creek Allotment located wholly within Utah. Specifically, the Duck Creek Allotment consists of 1,078 acres of SITLA land, 8,617 acres of private land, and 13,090 acres of federal land. Wood Decl. ¶ 9. BLM manages the SITLA and private lands pursuant to special exchange-of-use agreements with private property owners and

---

[1] In the event this Court allows the State to intervene prior to deciding the Defendants' Motion to Dismiss, the State may, for reasons that are apparent in this brief, request the opportunity to submit a brief in response to Defendants' Motion to Dismiss with appropriate opportunity for WWP to reply to the State's response brief. The grazing allotment at issue is located entirely in Utah. All of the grazing permittees and private landowners that will be directly impacted by this decision reside in Utah. Accordingly, the State not only has a significant interest in this case, but also a significant interest in the outcome of Defendants' Motion to Dismiss.

SITLA lessees within the Duck Creek Allotment. Wood Decl. ¶¶ 10, 11. These exchange-of-use permits may be issued only to "an applicant who owns or controls lands that are unfenced and intermingled with public lands in the same allotment when use under such an agreement will be in harmony with the management objectives for the allotment and will be compatible with the existing livestock operations." 43 C.F.R. § 4130.6-1(a). All of the grazing permittees are Utah residents, as are the private landowners whose land is grazed under exchange-of-use agreements within the Duck Creek Allotment. Wood Decl. ¶¶ 13, 14.

On September 12, 2008, the Salt Lake Field Office issued a final decision approving 10-year grazing permits and range improvements on the Duck Creek Allotment (the "BLM Final Decision"). Notice of Final Decision and Finding of No Significant Impact, Duck Creek Allotment (attached as Ex. B). Utah actively participated in the scoping and subsequent decision-making process for this decision. *Id*. at 4; Wood Decl. ¶ 22.

The BLM Final Decision approved a rotational grazing system where cattle would use four different pastures on different schedules in order to better protect rangeland health. IBLA Decision, ECF No. 1-1, at 9, 30-33. BLM found that the implementation of the rotational grazing system would allow plants to re-grow and recover from any grazing each year the particular pasture is grazed. BLM Final Decision at 12. BLM also found that the rotational grazing system would reduce riparian use for two years out of the four-year rotation cycle. *Id.* Implementation of the project would further benefit riparian areas and wildlife through the construction of a water system that "improve[s] the condition of the riparian areas on the Duck Creek allotment by providing clean water alternatives to livestock and wildlife." *Id.* at 13. Finally, BLM concluded that its Decision complied with FLPMA and the controlling Randolph Management Framework Plan. IBLA Duck Creek Decision at 8, 27.

WWP challenged the BLM Final Decision before the United States Department of the Interior's Office of Hearings and Appeals, Departmental Cases Hearings Division and an Administrative Law Judge reversed the Decision. IBLA Decision at 7. The IBLA later reversed the decision of the Administrative Law Judge. *Id*. at 12.

WWP filed this suit in the District of Idaho on January 29, 2019. Compl., ECF No. 1. Due to the State's significant interest in the BLM Final Decision, the State seeks to intervene in this suit as Defendants.

## Argument

### I.   The State Is Entitled To Intervene As A Matter Of Right.

Four elements must be satisfied for a party to intervene as of right under Federal Rule of Civil Produced 24(a)(2):  (1) the application to intervene must be "timely"; (2) the party must "have a significantly protectable interest relating to the property or transaction that is the subject of the action"; (3) the party must be "situated such that the disposition of the action may impair or impede the party's ability to protect that interest"; and (4) the party is "not . . . adequately represented by existing parties." *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003) (citing Fed. R. Civ. P. 24(a)(2)). The State meets its burden on each of these factors.

### A.   The State's motion is timely.

Among the factors to be considered in evaluating timeliness are: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Peruta v. Cty. of San Diego*, 824 F.3d 919, 940 (9th Cir. 2016) (quoting *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004)). Here, no party can claim that it has been prejudiced by any delay. *See United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004); *Day v. Apoliona*, 505 F.3d 963, 965 (9th Cir. 2007) (deeming motion timely when made two years after case was filed); *Smith v. Los Angeles Unified*

*Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016) (deeming motion timely when made twenty years after case was filed, because the "[m]ere lapse of time alone is not determinative").

Here, the State has moved to intervene prior to the Court issuing a decision on Defendants' Motion to Dismiss (filed on April 8, 2019), thus the suit is still in its early stages. Here, no party can claim that it has been "prejudice[d]" by any delay. *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004). Indeed, no delay will occur as the State will abide by the Court's schedule for this case. The State has moved to intervene "at th[e] particular stage of the lawsuit" in which its interests were implicated. *Id*. By any standard this motion is timely.

### B. The State has a strong interest in management of land within its borders and SITLA has a strong interest in management of federal land utilized in a common grazing system with adjoining SITLA land.

A party has a sufficient interest for intervention "if it will suffer a practical impairment of its interests as a result of the pending litigation." *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006). Similarly, a party has a protectable interest in the outcome of a suit that might, "as a practical matter, bear significantly on the resolution of [its] claims" in a "related action." *United States v. Stringfellow*, 783 F.2d 821, 826 (9th Cir. 1986), *vacated on other grounds sub nom, Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370 (1987). This case implicates Utah's sovereign interests in the federal management of land within its borders. *See Georgia v. U.S. Army Corps of Eng'rs,* 302 F.3d 1242, 1258 (11th Cir. 2002) (Where "a party seeking to intervene in an action claims an interest in the very property and very transaction that is the subject of the main action, the potential *stare decisis* effect may supply the practical disadvantage [that] warrants intervention as of right."). Indeed, the BLM Final Decision's direct impacts are wholly contained in a single county within Utah's boundaries. As the Supreme Court has held, a state has a sovereign interest in "preserv[ing] its sovereign

territory." *Massachusetts v. EPA*, 549 U.S. 497, 518-19 (2007) (affirming that states have an "independent interest" in protecting the natural environments and resources within the state's boundaries).

Further, economic impacts on government entities implicate a concrete and particularized state interest. *See City of Sausalito v. O'Neill*, 386 F.3d 1186, 1198-99 (9th Cir. 2004) (holding that potential lost taxes derived from tourist revenues are a sufficient economic concern to trigger a government entity's legally cognizable and protectable proprietary interest, thereby conferring Article III standing). To trigger a right to intervene, however, an economic interest must be concrete and related to the underlying subject matter of the action. *See Arakaki* at 1085; *So. Cal. Edison Co. v. Lynch,* 307 F.3d 794, 803 (9th Cir. 2002).

In this case, the State has an interest in protecting the environmental quality of real property and resources within its borders. The SITLA and private lands within the Duck Creek Allotment are part of the rotational grazing system implemented by the BLM Final Decision, the success of which depends on the existence of a large area of land where livestock may frequently rotate between different pastures after short, intense periods of grazing. Payne Decl. ¶¶ 18, 19. Should WWP succeed in ending the practice of rotational grazing on federal lands within the Duck Creek Allotment, it is unlikely that the SITLA lands would be able to sustain the rotational grazing system on their own. Payne Decl. ¶ 20. The acreage of SITLA land within the Duck Creek Allotment is likely too small to implement a rotational grazing system that requires the frequent transfer of cattle to different pastures. *Id*. Without the implementation of the rotational grazing system, the SITLA lands would lose the existing ecological benefits of the rotational grazing system, like improved riparian health and conditions for livestock and wildlife. *Id*. at ¶¶ 17, 19, 20; *see also* BLM Final Decision, at 12-13. Riparian and rangeland conditions on the

SITLA lands would degrade, with consequent negative impacts to both wildlife and domestic livestock.  The State's interest in the ecologically healthy and successful management of livestock grazing on the 1,078 acres of SITLA lands within the Duck Creek Allotment demonstrates the State's right to intervene in this case.

The State also has an interest in protecting its financial and socioeconomic stake in grazing operations within Utah.  The grazing industry plays a vital role in Utah's economy.  Utah's plentiful rangelands support more than "6,000 cattle ranching families" making livestock production the cornerstone of Utah's agricultural industry.  Utah Economic Council: Economic Report to the Governor, 109 (2019), available at  https://gardner.utah.edu/wp-content/uploads/2019ERGOnline.pdf.  The ranching industry requires a "combination of private and public lands to be sustainable and economically viable."  *Id.*  Here, forty-three percent (43%), or nearly one-half, of the Duck Creek Allotment exists on state and private inholdings (approximately 9,695 acres), with SITLA holding 1,078 of those acres in trust for the benefit of Utah school children.  Wood Decl. ¶ 9.  The revenue from these and other trust lands support Utah's public education system.  Utah Code Ann. § 53C-1-102(1).  Thus, the State has an interest in maintaining the grazing industry in Utah and protecting the interests of all permittees who rely on rotational grazing within Utah.  *See* Utah Code Ann. § 4-2-103(1)(a), (b) (West 2019) (UDAF shall: "inquire into and promote the interests and products of agriculture and allied industries;" and "promote methods for increasing the production and facilitating the distribution of the agricultural products of the state."); *see also* Utah Code Ann. § 4-20-109 (West 2019).

Similarly, the State benefits financially from livestock grazing on federal lands within the Duck Creek Allotment, demonstrating the State's interests in this case.  Statewide, the federal government manages almost two-thirds of the land within Utah's borders.  Under federal law,

these public lands provide necessary direct and indirect contributions to state and local revenues. Of the $331.7 million in revenues generated in 2013 by the federal public lands in Utah, the state and its counties received $149.8 million, or 45.2 percent.[2]  These revenues come from grazing fees as well as other sources such as mineral-lease royalties, payments in lieu of taxes, timber sales, etc.  *See, e.g.*, 43 U.S.C. § 315i (BLM grazing fees partially distributed to states for the benefit of counties where the fees were generated).  Local businesses depend upon those activities that take place on public lands, and state-owned lands that help fund public schools are dependent upon the multiple uses of public lands around them.  Within the Duck Creek Allotment, the State derives revenues from the grazing fees generated by the livestock grazing on the 13,090 acres of federal land within the Duck Creek Allotment.  The State has a right to intervene in this case to protect the state and local revenues generated on federal lands in the Duck Creek Allotment.

The State's economic and property interests in the Duck Creek Allotment are clear and compelling, necessitating its involvement in this case as an intervenor of right.

### C. Judgment in favor of WWP would impair the State's interests.

The State would suffer a concrete injury-in-fact were this Court to dispose of this case in the WWP's favor.  The third requirement of Rule 24(a)(2) is satisfied when the suit "may as a practical matter impair or impede [an applicant's] ability to safeguard [its] protectable interest." *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 862 (9th Cir. 2016).  If WWP prevails, livestock grazing on federal, private, and SITLA lands within the Duck Creek Allotment would

---

[2] Jan Elise Stambro et al., Univ. of Utah, An Analysis of a Transfer of Federal Lands to the State of Utah xxvii (2014), http://digitallibrary.utah.gov/awweb/awarchive?type=file&item=73648.

diminish, as would the state and local revenue generated by livestock grazing on the Duck Creek Allotment.

The ability of the State to manage land use of the SITLA parcels within the Duck Creek Allotment would also be threatened if WWP were to prevail. Payne Decl. ¶¶ 19, 20. Livestock grazing on those SILTA lands within the Duck Creek Allotment currently occurs under an "exchange of use" agreement with the BLM and the BLM grazing permittees who utilize BLM lands also within the Duck Creek Allotment. Wood Decl. ¶ 11. The rotational grazing system in the Duck Creek Allotment authorized by the BLM Final Decision includes both BLM lands and SITLA lands. Id. Successful rotational grazing would not be feasible on the SITLA lands alone. Payne Decl. ¶ 20. The 1,078 acres of SITLA land are not sufficient on their own to host a successful rotational grazing system without inclusion into a grazing system that incorporates surrounding federal lands. Id. WWP's requested remedy thus constitutes a direct threat to successful rotational grazing on the SITLA lands within the Duck Creek Allotment. The prospective impairment to the State's protectable interests in its real property and economic wellbeing support granting intervention.

### D. Existing parties cannot adequately represent the State's interests.

The burden of showing that other parties cannot adequately represent an intervenor's interests is "minimal" and a movant need only show that representation of its interest "may be" inadequate. *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011) (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10 (1972)). The Ninth Circuit has "stress[ed] that intervention of right does not require an absolute certainty that a party's interests will be impaired or that existing parties will not adequately represent its interests." *Id.* at 900. Rule 24 advisory committee notes state that "'if an absentee would be substantially affected in a practical sense by the determination made in an action, [it] should, as a

general rule, be entitled to intervene.'" *Arakaki*, 324 F.3d at 1086 (quoting *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001)).

Three factors are relevant to determining whether a proposed intervenor's interests are adequately represented: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Arakaki*, 324 F.3d at 1086.

While the State and the Federal Defendants all seek to defend the IBLA's decision, this does not ensure that the Federal Defendants will adequately represent the State. For example, the State is particularly concerned with defense of the IBLA's decision due to its impact on the success of livestock grazing on SITLA lands held in trust by the State. The BLM does not own or manage SITLA lands and does not have a direct interest in successful management of those lands. The State's interests are not adequately represented by Defendants because (1) Defendants will not "undoubtedly" make all the State's arguments with regards to management of SITLA lands; (2) Defendants are not fully capable of making all arguments concerning the State's interests in its real property impacted by this case; and (3) the State, UDAF, and SITLA which owns and manages its lands for the benefits of schools, will offer necessary elements to the proceedings relating to Utah real property and resources. These facts satisfy the State's *de minimis* burden to show Federal Defendants' representation may be inadequate.

II.     **Alternatively, The State Should Be Allowed To Intervene Permissively.**

If the Court does not grant the State intervention as a matter of right, the Court should allow the State to intervene in this matter pursuant to Fed. R. Civ. P. 24(b)(1)(B), which provides:

> On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact.

Permissive intervention may be granted where "(1) there is an independent ground for jurisdiction; (2) the motion is timely; and (3) the movant's claim or defense and the main action must have a common question of the law or fact in common." *Amanatullah v. U.S. Life Ins. Co.*, Case No. 4:15-cv-00056-EJL, 2017 WL 2906045 at *1 (D. Idaho June 29, 2017) (citation omitted). Additionally, the court will consider whether intervention will unduly delay or prejudice the original parties and whether the movant's interests are adequately represented by existing parties. *Id.*

The State easily satisfies each of these requirements. An independent ground for jurisdiction exists through the federal question doctrine, 28 U.S.C. § 1331, augmented through supplemental jurisdiction under 28 U.S.C. § 1367. As explained in the argument for intervention of right, the motion is timely and will not delay proceedings or otherwise prejudice existing parties. The State's defense of livestock grazing on certain BLM lands within its borders shares common questions of law and fact with the main action – WWP's assertion that the IBLA ruling was not proper.

Alternatively, the Court may permit Utah to intervene under Fed. R. Civ. P. 24(b)(2) where the State administers Utah statutes and regulations that are interdependent with the federal statutes at issue in WWP's complaint. In *Nuesse v. Camp*, 385 F.2d 694 (D.C. Cir. 1967), a Wisconsin state bank sued the United States Comptroller of Currency seeking declaratory and injunctive relief to prevent the Comptroller from approving an application of a national bank to open a branch in the vicinity of the state bank's office. The Wisconsin Banking Commissioner sought intervention which was denied by the district court. The D.C. Circuit Court of Appeals reversed, finding that intervention was appropriate, in part, based upon Fed. R. Civ. P. 24(b)(2).

MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE - 11

The district court had concluded that Rule 24(b)(2) was inapplicable because the litigation was not an interpretation of a state law being administered by the federal defendant. The circuit court overturned the district court's "excessively narrow" ruling. *Id.* at 705. The circuit court determined that the district court's denial of intervention ignored the "'intimacy of the relationship between and interdependency of the Federal and State statutes.'" *Id.* (citation omitted). The court noted that the federal statute at issue reflected a pervasive policy of coordination with the state and that the federal statute's interpretation was dependent on the state's policy and legislation. *Id.* The circuit court concluded that "permissive intervention is available when sought because an aspect of the public interest with which [the state official] is officially concerned is involved in the litigation." *Id.* at 706; *see also Blake v. Pallan*, 554 F.2d 947, 953 (9th Cir. 1977) ("A state official has a sufficient interest in adjudications which will directly affect his own duties and powers under the state laws.").

Similarly here, WWP's reliance on FLPMA to support its complaint is significantly interdependent with the State's management of grazing and agriculture in Utah. The Utah legislature has tasked UDAF to "work cooperatively to promote efficient multiple-use management of the rangeland resources of the public lands administered by [BLM] within the state to benefit the overall public interest." Utah Code Ann. § 4-20-109. Similarly, FLPMA "reflects a pervasive policy of coordination" with the State's interests. *Nuesse*, 385 F.2d at 705. Accordingly, Fed. R. Civ. P. 24(b)(2) provides an alternate ground upon which the Court may permit the State to intervene in this action.

## Conclusion

For the foregoing reasons, the State respectfully requests that this Court grant this motion for intervention.

Respectfully submitted this 13th day of June, 2019.

HOLLAND & HART, LLP

/s/ William G. Myers III
William G. Myers III
Alison C. Hunter

*Attorneys for Proposed Intervenor-Defendants Utah Department of Agriculture and Food and State of Utah School and Institutional Trust Lands Administration*

UTAH ATTORNEY GENERAL'S OFFICE
Kathy A.F. Davis
Anthony L. Rampton
Assistant Attorneys General

*Attorneys for Proposed Intervenor-Defendants State of Utah, Utah Department of Agriculture and Food, and State of Utah School and Institutional Trust Lands Administration*

**Certificate of Service**

I HEREBY CERTIFY that on the 13th day of June, 2019, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Laurence J. Lucas
llucas@advocateswest.org
Megan Marie Backsen
meganbacksen@gmail.com
Todd C. Tucci
ttucci@advocateswest.org
*Counsel for Western Watersheds Project*

Rebecca Jaffe
Rebecca.jaffe@usdoj.gov
*Counsel for Interior Board of Land Appeals and Department of the Interior*

/s/ William G. Myers III
for HOLLAND & HART LLP

12793178_v3